UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ANNA MAYO, § | |
| § | |
| Plaintiff, § | |
| VS. § | CIVIL ACTION NO. H-10-1951 |
| § | |
| HALLIBURTON COMPANY; d/b/a KBR § | |
| KELLOGG BROWN & ROOT, *et al*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

**I.   Introduction**

Pending before the Court is the defendants', Halliburton Company d/b/a KBR Kellogg Brown & Root (KBR) ("Halliburton"); Kellogg Brown & Root Services, Inc.; Kellogg Brown & Root International, Inc.; Kellogg Brown & Root, LLC;[1] Kellogg Brown & Root, Inc.;[2] Kellogg Brown & Root, S. de R.L.; Kellogg Brown & Root (KBR), Inc.; KBR Technical Services, Inc.; KBR, Inc.[3] (collectively, "KBR"); and Service Employees International, Inc. (SEII)[4] (collectively with KBR, "the defendants"),[5] motion to dismiss (Docket Entry No. 19).  The plaintiff, Anna Mayo, filed a response in opposition (Docket Entry No. 25) to the defendants' motion, to which the defendants filed a reply (Docket Entry No. 26).  The defendants also filed a notice of supplemental authority in further support of their motion (Docket Entry No. 27) and an

---

[1] The defendants maintain that this business entity is actually "Kellogg Brown & Root LLC."
[2] The defendants allege that the plaintiff identifies Kellogg Brown & Root, Inc. twice: (1) once as Kellogg Brown & Root, Inc. and (2) again improperly as Kellogg Brown & Root (KBR), Inc.  The defendants further allege that Kellogg Brown & Root, Inc. is no longer an active company.
[3] Although KBR, Inc. appears in the caption, the defendants assert that KBR, Inc. has not been named as a party in this case because the Plaintiff omitted KBR, Inc. from the "Parties" section of the plaintiff's original complaint (Docket Entry No. 1).  KBR, Inc. nonetheless returned a waiver of service out of "an abundance of caution."  Because the plaintiff has not included KBR, Inc. in the "Parties" section, has not asserted any claims against KBR, Inc., and has not contested KBR, Inc.'s requested dismissal, the Court determines that the plaintiff has abandoned its claims against KBR, Inc. and dismisses it from this suit.
[4] The defendants maintain that this business entity is actually "Service Employees International Inc."
[5] The plaintiff also sued John Doe (Rapist), but he is not a movant in this proceeding.

amended notice of supplemental authority (Docket Entry No. 28). The plaintiff filed a sur-reply (Docket Entry No. 36) to the defendants reply. After having carefully considered the pleadings, the motion, the responses and the applicable law, the Court determines that the defendants' motion should be granted in part, and that the rest of the proceedings should be stayed, pending the outcome of a case currently on appeal to the Fifth Circuit.[6]

## II.     Factual Background

The plaintiff entered into an employment contract with SEII as an Operations Specialist in Houston, Texas on October 31, 2008. From November 1, 2008 through November 30, 2009, she lived and worked at Joint Air Base in Balad, Iraq. She was housed in living quarters provided by her employer that consisted of an outfitted room in a shipping container, placed in a row of similar structures. During the relevant time period, the plaintiff worked the night shift. She alleges that on November 30, 2009, a sub-contract worker for KBR broke into her room, then beat and raped her. Her employment agreement stated, "Employee's sole recourse for any injury, illness, or death against Employer and/or any other parent or affiliate of Employer arising out of or in the course of your employment under this Agreement shall be as determined under the provisions of the Defense Base Act ['DBA']." _See_ [Docket Entry No. 20, Ex. 1, p. 1, ¶ 3].

The parties do not dispute that on December 10, 2009, the defendants submitted a claim to the Department of Labor and the defendants' insurer Chartis Insurance on the plaintiff's behalf, seeking benefits for alleged injuries resulting from the alleged assault. Chartis then

---

[6] _See_, _Fisher v. Halliburton_, 703 F. Supp. 2d 639 (S.D. Tex. 2010), _appeal filed_, No. 10-20202 (Mar. 26, 2010), _pet. for permission to file appeal filed_, No. 10-11 (Apr. 5, 2010), _reconsideration denied,_ 2005 WL 2196268 (S.D. Tex. May 27, 2010), No. H-06-1168 ("the _Fisher_ case").

contacted the plaintiff, and she began receiving benefits of $1224.66 per week, effective December 1, 2009.[7]

### III. Contentions of the Parties

#### A. The Defendants' Contentions

The defendants maintain that Halliburton is entitled to dismissal because the plaintiff did not allege any claims against Halliburton and because the plaintiff never worked for the defendants while the defendants were under Halliburton's control. The defendants also maintain that the other defendants should be dismissed for the following reasons. The defendants maintain that the plaintiff cannot state a claim for intentional infliction of emotional distress ("IIED") under applicable Texas law. The defendants argue that the plaintiff cannot state a claim for breach of contract because her claim is not based on any breach of SEII's obligations under her employment contract. The defendants also aver that the plaintiff's claim of "agency, joint venture, joint enterprise, direct corporate liability" must be dismissed because that claim does not state a cause of action. Additionally, the defendants maintain that the plaintiff's state law claims (negligence, negligent undertaking, breach of contract, fraud in the inducement to enter the employment contract, fraud in the inducement to agree to arbitration and IIED are barred by the DBA. Lastly, the defendants maintain that this Court should not interpret the DBA in keeping with the *Fisher* case analysis because that case is currently on appeal to the Fifth Circuit.

#### B. The Plaintiff's Contentions

The plaintiff claims that she was awaken by a knock on her Containerized Housing Unit at approximately 10:30 a.m. on November 27, 2009. She claims to have believed the man

---

[7] The parties dispute the nature of these benefits. The defendants contend that these were DBA benefits, whereas the plaintiff asserts that they were paid gratuitously.

knocking was a maintenance department employee and let him into her quarters.[8] She says that the man checked her bathroom, then left a few moments later. The plaintiff claims to have mentioned that man's visit to several co-workers and to the supervisor of the Operations and Maintenance Department. She claims that the supervisor told her that "SCW's" were not supposed to enter her room without an "Expat." She alleges that on November 30, 2009, that same maintenance man broke into her room, then beat and raped her.

The plaintiff has asserted the following claims against some or all of the defendants: (1) IIED;[9] (2) breach of contract;[10] (3) agency, joint venture, joint enterprise, direct corporate liability;[11] (4) negligence;[12] (5) negligent undertaking;[13] (6) fraud in the inducement to enter the employment contract;[14] and (7) fraud in the inducement to agree to arbitration.[15]

The plaintiff asserts that the DBA does not provide her exclusive remedy against the defendants because: (1) she was not raped in the course and scope of her employment; (2) she was not attacked because of her employment; (3) she suffered an intentional injury not covered by the DBA; and (4) the defendants' motion is not ripe because the parties have not conducted discovery regarding the "course and scope" of the plaintiff's employment.

## IV. Standard of Review

### A. FED. RULE CIV. P. 12(b)(1) Standard[16]

Rule 12(b)(1) permits the dismissal of an action for the lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). "If [a federal] court determines at any time that it lacks subject-matter

---

[8] The parties agree that the alleged rapist was a sub-contract worker for KBR.
[9] The plaintiff asserts this claim against the defendants and John Doe (rapist).
[10] The plaintiff asserts this claim against SEII.
[11] The plaintiff asserts this "claim" against the defendants.
[12] The plaintiff asserts this claim twice, once against KBR and once against the defendants.
[13] The plaintiff asserts this claim against the defendants.
[14] *Ibid*.
[15] The plaintiff asserts this claim against KBR. She also asserted claims against John Doe for (8) sexual assault.
[16] This standard is relevant for the Court's analysis of whether some or all of the plaintiff's claims are barred by the DBA, considered *infra* at Section **V.E.**

jurisdiction, [it] must dismiss the action." FED. R. CIV. P. 12(h)(3); *see also*, *Berkshire Fashions, Inc. v. M.V. Hakusan II*, 954 F.2d 874, 879 n.3 (3d Cir. 1992) (citing *Rubin v. Buckman*, 727 F.2d 71, 72 (3d Cir. 1984)) (reasoning that "[t]he distinction between a Rule 12(h)(3) motion and a Rule 12(b)(1) motion is simply that the former may be asserted at any time and need not be responsive to any pleading of the other party."). Because federal courts are considered courts of limited jurisdiction, absent jurisdiction conferred by statute, they lack the power to adjudicate claims. *See, e.g., Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994). Therefore, the party seeking to invoke the jurisdiction of a federal court carries "the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009) (citing *New Orleans & Gulf Coast Ry. Co. v. Barrois*, 533 F.3d 321, 327 (5th Cir. 2008); *see also*, *Stockman*, 138 F.3d at 151.

When evaluating jurisdiction, "the [federal] court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *MDPhysicians & Assoc., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)); *see also*, *Vantage Trailers*, 567 F.3d at 748 (reasoning that "[i]n evaluating jurisdiction, the district court must resolve disputed facts without giving a presumption of truthfulness to the plaintiff's allegations."). In making its ruling, the Court may rely on any of the following: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or . . . (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *MDPhysicians*, 957 F.2d at 181 n.2 (citing *Williamson*, 645 F.2d at 413).

**B.     FED. RULE CIV. P. 12(b)(6) Standard**[17]

A defendant may to move to dismiss a plaintiff's complaint for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). Under the requirements of a Rule 12(b)(6) motion, "[t]he plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 194 (5th Cir. 1996) (citing *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991)). Dismissal is appropriate only if the "[f]actual allegations [are not] enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Moreover, in light of Federal Rule of Civil Procedure 8(a)(2), "[s]pecific facts are not necessary; the [allegations] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555). Even so, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly* at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

More recently, in *Ashcroft v. Iqbal*, the Supreme Court expounded upon the *Twombly* standard, reasoning that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly* at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

---

[17] This standard is relevant for the Court's analysis of KBR, Inc. and Halliburton's presence in this suit, considered *supra* at n.3 and *infra* at Section **V.A.**, respectively. It is also relevant for the Court's analysis of the plaintiff's claims of IIED, breach of contract and "agency, joint venture, joint enterprise, direct corporate liability," considered *infra* at Sections **V.B-V.D.**, respectively.

inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 129 S. Ct. at 1949 (citing *Twombly* at 556). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'-- 'that the pleader is entitled to relief.'" *Ashcroft* at 1950 (quoting FED. R. CIV. P. 8(a)(2)). Nevertheless, when considering a 12(b)(6) motion to dismiss, a court's task is limited to deciding whether the plaintiff is entitled to offer evidence in support of his claims, not whether the plaintiff will eventually prevail. *See*, *Twombly* at 563 n.8 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (overruled on other grounds)); *see also, Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).

## V. Analysis and Discussion

### A. Halliburton Dismissal

The parties agree that Halliburton should be dismissed from this suit. Despite the parties' agreement, the plaintiff has not yet conferred with the defendants regarding a stipulation of dismissal for Halliburton pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), nor has she voluntarily dismissed Halliburton. Accordingly, the Court grants the defendants' motion to dismiss Halliburton pursuant to Federal Rule of Civil Procedure 12(b)(6).

### B. IIED

The plaintiff has alleged that the defendants acted intentionally and/or recklessly in an extreme and outrageous manner, thereby causing the plaintiff severe emotional distress. The Court grants the defendants' motion to dismiss the plaintiff's IIED claims because her IIED claims rely only on facts alleged for her other tort claims.[18] The Texas Supreme Court has stated

---

[18] The Court here only considers the plaintiff's IIED claims with respect to the defendants. John Doe is not a movant in the present proceedings, and the Court does not address the plaintiff's claim of IIED against John Doe.

Under Texas law, to recover damages for IIED, "a plaintiff must prove that (1) the defendant acted intentionally or recklessly, (2) the conduct was extreme and outrageous, (3) the actions of the defendant caused the

that IIED is "first and foremost, a 'gap filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffman-La Roche v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) (internal citation omitted) ("Where the gravamen of a plaintiff's complaint is really another tort, [IIED] should not be available."). The Fifth Circuit also recognizes that IIED is a "gap filler." *Day v. Rogers*, 2007 U.S. App. LEXIS 29617, at *9 (5th Cir. Dec. 21, 2007). Moreover, the tort of IIED was "never intended to supplant or duplicate existing statutory or common-law remedies." *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005). This is true even if a plaintiff's other claims are barred. *See*, *Creditwatch*, 157 S.W.3d at 816.

In this case, the gravamen of the plaintiff's IIED claim is identical to her claims for negligence and negligent undertaking because all of her claims are based on the same alleged facts. <u>*See*</u> [Docket Entry No. 1, The Plaintiff's Original Complaint, ¶¶ 9-22, 62-63]. Under Texas law, the plaintiff may not recover for IIED when she has other avenues of redress, regardless of her ultimate success on the alternative available claims. *See*, *Creditwatch* at 816. Because the plaintiff has other causes of action under which she could potentially recover – even if those claims are ultimately barred by the DBA[19] – the plaintiff fails to state a claim for IIED. The plaintiff's IIED claim duplicates her negligence and negligent undertaking claims because all three claims are based on the same alleged facts. Therefore, the Court grants the defendants' motion to dismiss the plaintiff's IIED claim.

---

plaintiff emotional distress, and (4) the resulting emotional distress was severe. *See*, *Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 65 (Tex. 1998) (internal quotation and citation omitted).
[19] *See*, Section **V.F.**, *infra*.

### C. Breach of Contract

The plaintiff has alleged that SEII breached its contract with the plaintiff by breaching implied and specific warnings that SEII allegedly owed to the plaintiff. The Court dismisses the plaintiff's breach of contract claim because of the plain language of her employment contract.[20] A breach of contract occurs when a party fails to perform an act that it has expressly or impliedly promised to perform. *Case Corp. v. Hi-Class Bus. Sys. Of Am., Inc.*, 184 S.W.3d 760, 769-70 (Tex. App. – Dallas 2005, pet. denied) (internal citation omitted). Indeed, whether a contracting party has breached the contract is generally a question for the Court, which determines as a matter of law what the contract requires of the parties. *See, Dew, Inc. v. Local 93, Liu*, 957 F.2d 196, 199 (5th Cir. 1992) (internal citations omitted). "[W]hether a contract is ambiguous is also a question of law," and a contract is not ambiguous simply because the parties disagree about its requirements. *Dew, Inc.*, 957 F.2d at 199 (internal citations omitted). Thus, disagreement about the meaning of contract terms will not change an issue of law into an issue of fact. *Id*.

Terms within a contract are given "their plain, ordinary, and generally accepted meaning unless the contract itself shows that particular definitions are used to replace that meaning." *Bituminous Cas. Corp. v. Maxey*, 110 S.W.3d 203, 208-09 (Tex. App. – Houston [1st Dist.] 2003, pet. denied) (internal citation omitted). If a contract is worded such that it "can be given a definite or certain legal meaning," then it is unambiguous and enforceable as written. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus.*, 907 S.W.2d 517, 520 (Tex. 1995).

Only if a contract is susceptible to multiple reasonable interpretations must a court adopt the interpretation most favorable to the movant. *Nat'l Union Fire Ins. Co.*, 907 S.W.2d at 520.

---

[20] To prevail on a cause of action for breach of contract, a plaintiff must prove: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App. – Houston [14th Dist.] 2005, pet. denied)).

Nevertheless, a court will not find a contract ambiguous merely because the parties offer contradictory interpretations. *See*, *Cent. States, Se. & Sw. Areas Pension Fund v. Creative Dev. Co.*, 232 F.3d 406, 414 n.28 (5th Cir. 2000) (quoting *Wards Co. v. Stamford Ridgeway Assocs.*, 761 F.2d 117, 120 (2d Cir. 1985) (internal quotation marks and citation omitted)) ("A Court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings."); *see also*, *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 465 (Tex. 1998).

The plaintiff attempts to support her breach of contract claim by citing certain portions of her employment agreement with SEII. *See* [Docket Entry No. 1, The Plaintiff's Original Complaint, ¶¶ 43-46]; *see also* [Docket Entry No. 20, Ex. 1, Employment Agreement, pp. 9-10, ¶¶ 15(a), 16, 16(a), 16(b), 16(m), and 16(n)]. However, those portions to which she cites refer to *her obligations* to SEII rather than to *SEII's obligations* to her. The plaintiff cannot distort the contract's unambiguous language to succeed on a breach of contract allegation.

Moreover, the plaintiff did not respond to the defendants' motion to dismiss the plaintiff's breach of contract claim in her response (Docket Entry No. 25).[21] The "failure to brief an argument in the district court waives that argument." *Magee v. Life Ins. Co. of N. Am.*, 261 F. Supp. 2d 738, 748 & n.10 (S.D. Tex. 2003) (citing *Lookingbill v. Cockrell*, 293 F.3d 256, 264 (5th Cir. 2000); *see also*, S.D. Tex. Local Rule 7.4 ("Failure to respond will be taken as a representation of no opposition."). Therefore, the Court determines that the Plaintiff has waived her response to the defendants' arguments with respect to her breach of contract claim and grants the defendants' motion to dismiss that claim.

---

[21] Despite the fact that the plaintiff finally mentioned her breach of contract claim in her sur-reply (Docket Entry No. 36), she cited no case law to counter the defendants' arguments on this issue.

D.  The Plaintiff's "Agency, Joint Venture, Joint Enterprise, Direct Corporate Liability" Claim

The plaintiff asserts the "claim" of "agency, joint venture, joint enterprise, direct corporate liability" against the defendants. The Court holds that these assertions are not legal causes of action and dismisses these claims. Here, the plaintiff alleges theories of liability under which the defendants could potentially be liable – not legal causes of action. *See, Western Oil & Gas. JV, Inc. v. Griffiths*, 91 Fed. Appx. 901, 904 (5th Cir. 2003) ("Like alter ego, the single business enterprise doctrine is an equitable remedy and not a cause of action. Absent a cognizable cause of action, this remedy is unavailable") (internal citation omitted); *O'Bryan v. Holy See*, 556 F.3d 361, 370 n.1 (6th Cir. 2009) ("[R]*espondeat superior* is not a cause of action. It is a basis for holding the [defendant] liable for the acts of its agents. Thus, *respondeat superior* will factor in to our discussion of the other claims advanced by plaintiffs but will not be treated separately.").

Additionally, the plaintiff did not respond to the defendants' motion to dismiss this "claim" from the plaintiff's original complaint.[22] Thus, the Court dismisses the plaintiff's "agency, joint venture, joint enterprise, direct corporate liability" claim because the plaintiff has waived her response to the defendants' argument. *See,* Section **V.C.**, *supra*.

E.  The DBA

The Court stays these proceedings with respect to the plaintiff's remaining claims of negligence, negligent undertaking, fraud in the inducement to enter the employment contract and fraud in the inducement to agree to arbitration. These remaining claims implicate the DBA, and the Fifth Circuit is currently determining how to interpret a portion of the DBA that is integral to the Court's holding in the present case. *See*, *Fisher v. Halliburton*, 703 F. Supp. 2d 639, 665

---

[22] Again, despite the fact that the plaintiff finally mentioned this "claim" in her sur-reply (Docket Entry No. 36), she cited no case law to counter the defendants' arguments on this issue.

(S.D. Tex. 2010), *appeal filed*, No. 10-20202 (Mar. 26, 2010), *pet. for permission to file appeal filed*, No. 10-11 (Apr. 5, 2010), *reconsideration denied,* 2005 WL 2196268 (S.D. Tex. May 27, 2010), No. H-06-1168. The DBA established a uniform federal compensation scheme for defense contractors and employees working outside the United States. *See*, *e.g.*, *AFIA/CIGNA Worldwide v. Felkner*, 930 F.2d 1111, 1112 (5th Cir. 1991); *see also*, *Royal Indem. Co. v. Puerto Rico Cement Corp.*, 142 F.2d 237, 239 (1st Cir. 1944) (the purpose of the DBA "was to provide a system of workmen's compensation both uniform and adequate in all the far-flung places occupied and to be occupied by the United States for military purposes."). The DBA extended the preexisting Longshore and Harbor Workers' Compensation Act ("LHWCA")[23] to include relief for injuries occurring at military bases acquired from foreign governments or in "any lands occupied or used by the United States for military or naval purposes . . . outside the continental United States." 42 U.S.C. § 1651(a)(2). The DBA also covers contractors engaged in "public work," which is defined as "projects or operations under service contracts and projects in connection with the national defense or with war activities." 42 U.S.C. § 1651(b)(1). The parties do not dispute that the plaintiff was hired specifically to contribute to the performance of a contract with the United States military, which constitutes public work under the DBA. *See*, 42 U.S.C. § 1651(b)(1).

When the DBA applies, the benefits it affords to contractor employees are "exclusive and in place of all other liability" of the employer, thereby eliminating claims for injuries covered by the DBA. 42 U.S.C. § 1651(c); *see also*, 33 U.S.C. § 905(a) (stating that the LHWCA's remedies "shall be exclusive and in place of all other liability of such employer to the employee . . . entitled to recover damages from such employer at law or in admiralty on account of such injury or death."). Thus, the DBA replaces state law damages claims, admiralty claims and state

---

[23] 33 U.S.C. §§ 901-950.

workers' compensation claims. *Carr v. Lockheed Martin*, 1999 WL 33290613, at *2 ("[i]t is undisputed that the [DBA] provides [the plaintiff] his sole remedy if his injury made the basis of [his claims] was suffered by him in the course and scope of his employment.").

The DBA is silent as to what qualifies as an "injury" under the act. However, "injury" is defined by the LHWCA as follows:

> accidental injury or death *arising out of and in the course of employment*, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury, and includes an injury caused by the willful act of a third person directed against an employee *because of his employment*.

33 U.S.C. § 902(2) (emphasis added). The extent to which "arising out of and in the course of employment" differs from "because of employment" is the issue currently pending before the Fifth Circuit. *Id.; see*, *Fisher v. Halliburton*, 703 F. Supp. 2d at 665.

In *Fisher*, the Southern District Court stayed its own proceedings and certified, *sua sponte*, an interlocutory appeal to the Fifth Circuit on the following issues:

> Whether the DBA covers only accidents, how to define an accident under the act, whether the willful act of a third party should be narrowly or broadly construed, or if all the foregoing inquiries should be subsumed in an intentional tort exception, the scope of which must also be determined without regard to the facts of the instant case.

*Fisher* at 665. Because the as-yet undetermined issues in *Fisher* are essential to the Court's determination of the motion currently pending in this case, the Court stays the plaintiff's remaining claims of negligence, negligent undertaking, fraud in the inducement to enter the employment contract and fraud in the inducement to agree to arbitration, pending the outcome of the *Fisher* appeal. *See, id.*

## VI.     Conclusion

Based on the foregoing discussion, the Court determines that the defendants' motion to dismiss should be granted in part and that the plaintiff's remaining claims should be stayed, pending the outcome of the *Fisher* appeal. The Court dismisses KBR, Inc. and Halliburton from the suit. The Court also grants the defendants' motion to dismiss the following claims against the defendants: IIED, breach of contract and "agency, joint venture, joint enterprise, direct corporate liability." The Court stays the proceedings on the plaintiff's remaining claims of negligence, negligent undertaking, fraud in the inducement to enter the employment contract and fraud in the inducement to agree to arbitration, pending the Fifth Circuit's decision in the *Fisher* case.

It is so **ORDERED**.

SIGNED at Houston, Texas this 26th day of October, 2010.

_____
Kenneth M. Hoyt
United States District Judge